**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-03301-DDD-NRN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PATRICK PIPKIN, a/k/a Patrick Leroy Pipkin, a/k/a Patrick-Leroy:Pipkin,
BRYAN HAMMON, a/k/a Bryan Hugh Hammon, and
UNKNOWN INDIVIDUALS WHO ENGAGED IN UNLAWFUL FENCING OF THE
HALLAR DEED AREA OR WHO HAVE OTHERWISE ACTED IN CONCERT WITH AN
ASSOCIATION OF INDIVIDUALS CALLED THE "FREE LAND HOLDER COMMITTEE,"

    Defendants.

---

**UNITED STATES' RESPONSE TO "FORMAL
CHALLENGE[S] TO THIS COURTS JURISDICTION" (ECF Nos. 31 & 32)**

---

Defendants Patrick Pipkin and Bryan Hammon (Defendants) have each filed a pleading called a "Formal Challenge to this Court[']s Jurisdiction" (ECF No. 31; ECF No. 32). The Court has characterized these filings as "motions." ECF No. 35. Because the motions raise similar arguments and the United States' response to both motions is essentially the same, it is submitting this consolidated response to both of them. The motions should be denied.

As reflected in their titles, the motions appear to bring jurisdictional challenges to the Complaint. See ECF No. 31 at 1 (describing "[r]eason for challenging this court's jurisdiction"); ECF No. 32 at 1 (referring to itself as "[a] respectful challenge of the jurisdiction of this court"). But Congress has granted the Court jurisdiction to hear cases, like this one, that: (1) arise under federal law (28 U.S.C. § 1331); (2) are commenced by the United States (28 U.S.C. § 1345); and

1

(3) bring claims under the Unlawful Inclosures of Public Lands Act of 1885 (UIA) (43 U.S.C. § 1062). Nothing in Defendants' filings disputes these jurisdictional grounds.

Instead, in contesting the Court's jurisdiction, Defendants rely on their view of the facts on which the Court's jurisdiction rests. They appear to argue that, in their view: (1) the United States does not own the land that is at issue, and that the Forest Service is only a management agency that has never proven its title to the land; and (2) Defendants did not construct an inclosure because trails and roadways on the land were left open. *See* ECF No 31 at 1-2; ECF No. 32 at 2.

Defendant's arguments do not undermine the Court's jurisdiction. At this stage of the case, the Court accepts as true the plaintiff's non-conclusory allegations of jurisdictional fact. *See COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1220 (10th Cir. 2016). Here, the United States has alleged facts sufficient to show that the Court has jurisdiction. *First*, the United States has alleged facts showing that it owns the land. *Second*, the United States has alleged facts showing that Defendants created an inclosure within the meaning of the UIA. Even if a fence has gaps or openings for trails or roadways, the UIA still prohibits the construction of an unpermitted fence on public land that marks off and obstructs passage over the land and asserts ownership and control over it, which is what the Complaint alleges Defendants did here.

Finally, even if the Court were to construe Defendants' arguments to contend that the Complaint fails to state a claim, the motions should still be denied. The Complaint includes factual allegations that plausibly show both the United States' ownership of the land and Defendants' violation of the UIA, and the Court must accept those allegations as true.

**FACTUAL BACKGROUND**

The following facts are set forth in the Complaint.

2

### A. The United States' ownership of the land

This matter concerns a dispute over public land, referred to in this action as the Hallar Deed Area. The Hallar Deed Area is an approximately 1,460-acre area located just north of Mancos, Colorado. ECF No. 1 ¶¶ 21-22 & Ex. 1. The United States brings claims under the UIA, 43 U.S.C. §§ 1061-66, and for trespass against Defendants Patrick Pipkin[1], Bryan Hammon[2], and the "FLHC Defendants," who are other unknown individuals who engaged in unlawful fencing of the Hallar Deed Area or who have otherwise acted in concert with a group called the Free Land Holder Committee (FLHC). ECF No. 1 ¶¶ 87-111.

The United States owns the Hallar Deed Area. ECF No. 1 ¶¶ 1, 22. It acquired the Hallar Deed Area in 1927 by warranty deed from grantor Fred C. Hallar. ECF No. 1 ¶ 23. At this time, the U.S. Department of Agriculture, Forest Service (the Forest Service) administers the land on the United States' behalf as part of the National Forest System, and more particularly, as part of the San Juan National Forest. *Id.* Members of the public use the Hallar Deed Area for many purposes, including recreation and grazing. *Id.* ¶¶ 1, 28-31.

### B. Defendants' fencing and marking off of the public land

In early October 2024, Mr. Pipkin, Mr. Hammon, and at least some of the FLHC Defendants, acting in concert, entered the Hallar Deed Area and began constructing a new fence

---

[1] At a March 5, 2025, status conference (ECF No. 36), an individual appeared in person and asked to be called "the man, in personam" and not "Patrick Pipkin." This is the same person as the Patrick Pipkin that the United States has named as a defendant. For clarity, the United States refers to that individual as "Mr. Pipkin" in this response.

[2] At the same March 5 status conference, an individual appeared by telephone and identified himself as "the man, Bryan." This appears to be the same person as the Bryan Hammon that the United States has named as a defendant. The United States refers to that individual as "Mr. Hammon" in this response.

3

that obstructed free passage over or through the land. *Id.* ¶¶ 35-53. They had no permission from the Forest Service or other right to do so. *Id.* ¶¶ 1, 36, 82, 89, 106.

Defendants' fencing amounted to an effort to mark off public land and withdraw it from public access except through Defendants' and the FLHC's consent. Id. ¶¶ 55, 57. Mr. Pipkin signed a "Proclamation" that was posted in Mancos stating, among other things, that the FLHC would honor existing grazing rights on the land only until the end of the year. *Id.* ¶¶ 73-74. Mr. Pipkin subsequently signed several additional notices that were posted in Mancos claiming the Hallar Deed Area on behalf of the FLHC. *Id.* ¶¶ 75, 81. The notices also purported to require anyone with a superior claim to the land to come forward by December 15, 2024, or the FLHC would treat its own claim as settled. *Id.* ¶ 75.

### C. Defendants' obstruction and hindrance of public access

The fence that Defendants and the FLHC constructed also hindered lawful access to and free passage across the Hallar Deed Area. *Id.* ¶ 56. It had openings at certain places where it intersected some trails and roads, but those openings did not prevent the fence from interfering with public use of the land. *Id.* Among other things, the fence interfered with the seasonal movement of cattle out of the Hallar Deed Area, endangered livestock and wildlife, and blocked off a cross-country ski trail. *Id.* ¶¶ 58, 60. And the disruption that Defendants' fence and notices caused also led local school officials to relocate an annual cross-country meet to avoid the disputed area. *Id.* ¶ 59.

### D. Defendants' refusal to remove the fencing

The Forest Service asked Mr. Pipkin to take down the fence, but none of Mr. Pipkin, Mr. Hammon, or the FLHC Defendants did so. *Id.* ¶¶ 62-64, 82-83. Instead, starting on October 10,

4

2024, a group of local residents banded together and took down the fence themselves. *Id.* ¶¶ 61, 69. The group piled the dismantled fencing materials on National Forest System land, and one or more of Mr. Pipkin, Mr. Hammon, or the FLHC Defendants later removed some, but not all, of those materials. *Id.* ¶¶ 70, 77-78. All the while, Mr. Pipkin continued to sign posted notices that the FLHC was asserting ownership of the land. *Id.* ¶ 81.

## ARGUMENT

### I. Legal standard

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a defendant may present either a facial attack on subject-matter jurisdiction based on the allegations in the complaint or a factual attack based on facts outside the complaint. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogation on other grounds recognized by Ratheal v. United States*, No. 20-4099, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021).

Here, Defendants' jurisdictional challenge appears to be a facial attack on jurisdiction. Neither Defendant presents any evidence. *See generally* ECF No. 31; ECF No. 32. Rather, Defendants appear to contend that the Court lacks jurisdiction on the ground that the United States does not allege evidence sufficient to support jurisdiction. *See* ECF No. 31 at 1 (arguing that the United States "has never provided proof of any kind of title"); ECF No. 32 at 2 (same). Defendants' mere allegations that the United States' allegations are incorrect are not enough to present a factual jurisdictional attack. *Cf. Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 508 (10th Cir. 2023) ("At the motion to dismiss stage, a defendant cannot impose upon a plaintiff the obligation of adducing evidentiary support for the existence of federal court subject matter jurisdiction by

5

simply challenging, in summary fashion, the factual basis for the existence of such jurisdiction."). Defendants' motions thus are properly construed as a facial attack on the Court's jurisdiction.

Accordingly, to resolve Defendants' motions, the Court here must determine whether the Complaint alleges facts sufficient to show that the Court has jurisdiction. When a party brings a "facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Id*.

Finally, even if Defendant's filings are intended to present a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the same standard applies—the Court must accept the allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (quotation omitted).

**II. The Complaint alleges facts sufficient to establish subject-matter jurisdiction.**

"Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citation omitted). Congress has exercised that authority in several ways relevant to this case. It has given district courts jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It has given them jurisdiction over "all civil actions. . . commenced by the United States." 28 U.S.C. § 1345. And it has given them jurisdiction specifically to hear claims under the UIA. *See* 43 U.S.C. § 1062 (providing that "jurisdiction is also conferred on any United States district court or territorial district court having jurisdiction over the locality where the land inclosed, or any part thereof, shall be situated, to hear and determine proceedings in equity, by writ of injunction, to

6

restrain violations of the provisions of this chapter."). Each of these provisions gives the Court an independent basis to hear the United States' claims.

Nothing in Defendants' motions calls any of these bases into question. Rather, Defendants simply allege that the United States or the Forest Service do not own the land or have not proven that they own the land. ECF No. 31 at 1-2, ECF No. 32 at 2. But none of those arguments shows that the United States has not alleged facts sufficient to support jurisdiction.

The same goes for Defendants' argument that their fence was not an inclosure because it left some roads and trails open. ECF No. 31 at 2; ECF No. 32 at 2. In 43 U.S.C. § 1062, Congress granted district courts jurisdiction to hear claims brought by the United States to remedy violations of the UIA, and the United States has asserted such claims here.

In his motion, Mr. Pipkin quotes several Bible verses and equitable maxims. ECF No. 32 at 2-8. But it is the Constitution and statute, not anything else, that defines the limits of the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute"). The authority Mr. Pipkin cites has no legal effect on the Court's jurisdiction.

Nor does Mr. Hammon present any authority that shows that the Court lacks jurisdiction. He cites six cases in his motion. None of them are relevant to the Court's subject-matter jurisdiction to hear claims like the ones brought by the United States here to remedy intrusions on public land. *See Melo v. United States*, 505 F.2d 1026, 1028-30 (8th Cir. 1974) (ruling that a plaintiff must first present an administrative tort claim to the United States before suing it under the Federal Tort Claims Act); *Town of Lantana, Fla. v. Hopper*, 102 F.2d 118, 119 (5th Cir. 1939) (ruling that the plaintiff in a diversity case failed to prove citizenship sufficient to confer diversity

7

jurisdiction); *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 552-85 (1947) (declining to exercise jurisdiction to review a state-court determination of a jurisdictional question on a writ of prohibition); *Rankin v. Howard*, 633 F.2d 844, 848-49 (9th Cir. 1980), *overruled by Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (discussing "clear absence of all jurisdiction" in the context of judicial immunity). The cite Mr. Hammon provides for *Chicago v. New York* yields a 1940 patent case from the United States Court of Claims. *See generally Mar-De-Passy Corp. v. United States*, 37 F. Supp. 141 (Ct. Cl. 1940).

### III. The United States has sufficiently alleged facts showing ownership of the land.

To the extent Defendants challenge whether the United States has stated plausible claims for relief under Rule 12(b)(6), their arguments rest on the same premise—that the United States has not shown that it owns the land. And their arguments fail for the same reason—the Complaint alleges facts that adequately show that the United States owns the land.

The United States' three claims all rest on the fact that the United States owns the land at issue. *See* 43 U.S.C. § 1061 (Claim 1) (prohibiting the inclosure of and the baseless assertion of a right to the exclusive use and occupancy of "public lands"); *id.* § 1063 (Claim 2) (prohibiting actions that inhibit or obstruct free passage over "any tract of public land"); Restatement (Second) of Torts § 158 (Claim 3) (creating liability "to another for trespass" when a person enters, remains on, or fails to remove a thing from the land "of the other"); *see also United States v. Osterlund*, 505 F. Supp. 165, 167 (D. Colo. 1981) (applying Restatement (Second) of Torts to federal trespass action).

The United States has satisfied this pleading standard, having alleged facts showing that it acquired and still owns the Hallar Deed Area. *See* ECF No. 1 ¶¶ 1, 4, 9, 21, 24-27.

Defendants contend that "[t]he land in question does not belong to UNITED STATES, United States, United States of America, or UNITED STATES OF AMERICA." ECF No. 31 at 1; ECF No. 32 at 2. And they contend that the United States has "never provided proof of any kind of title." ECF No. 31 at 1, ECF No. 32 at 2. But as explained above, because Defendants submit no evidence and mount a facial attack, the Court must accept the Complaint's allegations as true at this stage. *See, e.g.*, *COPE*, 821 F.3d at 1220. The United States has adequately alleged that it owns the land.

Defendants also urge that the "UNITED STATES FOREST SERVICE or U.S. FOREST SERVICE is only a management agency of the public lands" that has "never provided proof of any kind of title." ECF No. 31 at 2; ECF No. 32 at 2. But the title of the Forest Service is not a premise of the claims. The United States is the plaintiff in this lawsuit and it has alleged that it owns the Hallar Deed Area. ECF No. 1 ¶¶ 21, 23. That is all that is required.

Finally, to the extent Defendants argue that the typeface, capitalization, or presence or absence of a definite article before the name of the United States is legally significant on the question of ownership of the land, they cite no authority in support of that proposition, and the United States is aware of none.

**IV. The United States has alleged facts sufficient to show violations of the UIA.**

Defendants also appear to contend that they did not violate the UIA. *See* ECF No. 31 at 2 (arguing that "[n]o inclosures or enclosures were ever constructed"); ECF No. 32 at 2 (same). It is unclear whether Defendants make this contention to argue that the United States has not sufficiently alleged that they violated the UIA and that, as a result, the United States thus lacks jurisdiction to bring an action challenging the UIA. If they are making that argument, the Court

9

should reject it because the Complaint adequately alleges facts showing that Defendants violated the UIA.

The UIA, 43 U.S.C. §§ 1061-66, generally prohibits actions that hinder access to or free passage over public lands. The Act "was intended to prevent the obstruction of free passage or transit for any and all lawful purposes over public lands." *U.S. ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1509 (10th Cir. 1988) (quoting *Stoddard v. United States*, 214 F. 566, 568-69 (8th Cir. 1914)). The Supreme Court has explained that one "exclusionary technique" targeted by the Act "was the illegal fencing of public lands." *Leo Sheep Co. v. United States*, 440 U.S. 668, 683 (1979); *see Camfield v. United States*, 167 U.S. 518, 528 (1897) (explaining that when a party who "builds a fence" that "can only have been intended to inclose the lands of the government, he is plainly within the statute").

To the extent that Defendants may be suggesting that their alleged conduct did not violate the UIA because the fence did not fully encircle the land, this position is not supported by case law interpreting the UIA. A fence is an "inclosure"[3] under the statute when its effect is to mark off and assert control over public land, even if it does not completely surround or cut off all access to the land. *See Lawrence*, 848 F.2d at 1511 ("The mere presence of gates or openings in a fence does not mean the enclosure is lawful. . . . [I]t is not the fence itself, but its effect which constitutes the UIA violation") (citation omitted); *Stoddard*, 214 F. at 568 (openings in a fence do not make the fence lawful where they are insufficient "for the free passage of stock"); *cf. Golconda Cattle Co.*

---

[3] The case law refers interchangeably to an "inclosure" or to the modern spelling, "enclosure." *Compare, e.g. Camfield v. United States*, 167 U.S. 518, 521-22 (1897) (using both spellings) *with*, *e.g.*, *U.S. ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1504 (10th Cir. 1988) (enclosure). The United States uses "inclosure" to be consistent with the text of the statute.

10

*v. United States*, 214 F. 903, 908 (9th Cir. 1914) ("[A]n inclosure is the assertion of a claim of some right or title to the premises inclosed, and it operates as a notice to others of such claim.") (citation omitted).

In *Lawrence*, the Tenth Circuit signaled that marking off and asserting control over public land may create an inclosure even if it does not completely surround or cut off all access to the land. In that case, a cattle rancher constructed a 28-mile fence that inclosed several thousand acres of public and private lands in south-central Wyoming. *Lawrence*, 848 F.2d at 1504. The fence prevented pronghorn antelope from accessing winter forage on the public land, which the court held was subject to protection under the UIA. *Id.* at 1508-09. The rancher argued, among other things, that the fence did not constitute an inclosure because it included several unlocked gates. *Id.* at 1511. In rejecting this argument, the Tenth Circuit explained that "[t]he mere presence of gates or openings in a fence does *not* mean the enclosure is lawful." *Id.* (emphasis original). The Tenth Circuit indicated that it is the effect of the fence that matters to the statute, not the intent of the person who erected it. *Id*. at 1508 n.8.

This approach is consistent with other UIA cases that have similarly concluded that an inclosure need not fully surround the land to fall within the statute. For example, in *Lillis v. United States*, 190 F. 530 (9th Cir. 1911), the Ninth Circuit held that a fence of 40-45 miles that abutted impassable topography was actionable even though it "[o]f itself inclose[d] nothing," because the facts showed that the intended effect of the fence was to "construct a practical inclosure of public lands, or to impede free access thereto." *Id.* at 535; *cf. Hanley v. United States*, 186 F. 711, 713 (9th Cir. 1911) (approving a jury instruction that an inclosure is actionable if it "serves to exclude or to hinder or impede other persons or the public from free and unrestrained access to and upon

11

the lands" in a case where the uncontroverted facts showed that the fence was "down and open in places").

This interpretation is also consistent with a common, traditional meaning of "inclose," which is the use of a fence to mark off land. *See* Merriam-Webster's Collegiate Dictionary (10th ed. 2002) (defining "enclose" to mean, among other things, "to fence off (common land) for individual use"); Oxford English Dictionary Online (defining "enclosure" to mean a "space included within or marked off by boundaries"); Webster's Academic Dictionary (1895) (defining "inclosure" as, among other things, a "separation of land from common ground by a fence" or as "[a] barrier or fence").

Here, Defendants' fence created an inclosure because its effect was to mark off the Hallar Deed Area and assert a claim of right to it. Even if Defendants left gaps in the fence for certain roads and trails, the fence still blocked other trails. *See* ECF No. 1 ¶ 28. Nor is the public's use of the land, including for hunting, horseback riding, and grazing, restricted to officially recognized thoroughfares. *See id.* ¶ 31. And as the Complaint alleges, in the days after Defendants and the FLHC erected their fence, they also posted notices in the local area asserting ownership and control of the land. *Id.* ¶¶ 73-75, 81. Those notices, paired with the fence, had the effect of marking off the Hallar Deed Area, claiming it for Defendants.

In addition, the United States has also alleged other violations of the UIA that do not require a showing of an inclosure at all. *First*, the Complaint alleges facts showing that Defendants violated a provision of the UIA that separately prohibits "the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States. . . without claim, color of title, or asserted right." 43 U.S.C. § 1061. Here, the United States alleges facts adequately showing

12

that Defendants asserted a right to the exclusive use and occupancy of the Hallar Deed Area through the posting of proclamations and notices in the vicinity of the land. ECF No. 1 ¶ 73-75, 81.

*Second*, the United States alleged facts sufficient to show that Defendants' conduct also violated § 1063 of the UIA, which separately prohibits obstructing access to public land. *See* 43 U.S.C. § 1063. The allegations in the Complaint—including Defendants' unlawful fencing, their refusal to remove the fencing, and their repeated proclamations of exclusive rights to the land— are sufficient to show a violation of this provision.

In sum, Congress granted district courts jurisdiction to "hear and determine proceedings in equity, by writ of injunction, to restrain violations" of the UIA, 43 U.S.C. § 1062, and the Complaint adequately alleges facts showing such violations.

Finally, to the extent Defendants challenge whether the United States has stated plausible claims for relief under the UIA (or trespass) under Rule 12(b)(6), their arguments rest on the same premise—that the United States has not shown that Defendants inclosed the land—and fail for the same reason—the Complaint alleges facts that adequately show that Defendants did enter onto, inclose, mark off, and obstruct the land.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss should both be denied.

Dated: March 18, 2025.                           Respectfully submitted,


                                                 J. BISHOP GREWELL
                                               Acting United States Attorney


                                               *s/ V. William Scarpato III*
                                               Jennifer R. Lake
                                               V. William Scarpato III
                                               Assistant United States Attorney
                                               1801 California Street, Suite 1600
                                               Denver, Colorado 80202
                                               Telephone: (303) 454-0100
                                               Fax: (303) 454-0407
                                               jennifer.lake@usdoj.gov
                                               victor.scarpato@usdoj.gov

                                               Counsel for the United States of America

## CERTIFICATE OF COMPLIANCE UNDER DDD CIV. P.S. III(A)(4)

    I certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1). The pleading contains 3,998 words including footnotes and excluding the caption, signature block, certificate of service, and this certificate of compliance.

                                            *s/ V. William Scarpato III*
                                            V. William Scarpato III

## CERTIFICATE OF SERVICE

I certify that on March 18, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

None.

and I certify that on the same date I am causing the foregoing to be delivered to the following non-CM/ECF participants in the manner (mail, email, hand delivery, etc.) indicated by the nonparticipant's name[4]:

Patrick Pipkin (U.S. mail and email)
15276 Road 39.9
Mancos, CO 81328

P.O. Box 841616
Hildale, UT 84784

patpip28@gmail.com

Bryan Hammon (U.S. mail and email)
15276 Road 39.9
Mancos, CO 81328

645 N. Homestead St., 1823
Hildale, UT 84784

alaskanflyer@hotmail.com

                                                      *s/ V. William Scarpato III*
                                                      V. William Scarpato III

---

[4] No contact information is presently known for the unidentified Defendants.