IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03301-DDD-NRN

UNITED STATES OF AMERICA,

Plaintiff,

v.

PATRICK PIPKIN, a/k/a Patrick Leroy Pipkin, a/k/a Patrick-Leroy:Pipkin,
BRYAN HAMMON, a/k/a Bryan Hugh Hammon, and
UNKNOWN INDIVIDUALS WHO ENGAGED IN UNLAWFUL FENCING OF THE HALLAR DEED AREA OR WHO HAVE OTHERWISE ACTED IN CONCERT WITH AN ASSOCIATION OF INDIVIDUALS CALLED THE "FREE LAND HOLDER COMMITTEE,"

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 31, 32, 42, 43, & 44)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This case is before the Court pursuant to Orders, ECF Nos. 35 & 45, issued by Judge Daniel D. Domenico referring several motions, ECF Nos. 31, 32, 42, 43, & 44, filed by Defendants Patrick Pipkin and Bryan Hammon[1] in which they challenge the Court's jurisdiction (collectively, the "Motions to Dismiss"). The United States filed responses, ECF Nos. 40, 46, & 47, and a Notice of Supplemental Authority, ECF No. 41.

---

[1] During the March 5, 2025 Status Conference, Defendants Pipkin and Hammon indicated that they prefer to be addressed as the "The Man" and "The Man Bryan," respectively. *See* ECF No. 36. For clarity's sake, the Court refers to them as they are identified in the operative pleading: Mr. Pipkin and Mr. Hammon. Mr. Hammon filed ECF No. 31, and Mr. Pipkin filed the four other motions at ECF Nos. 32, 42, 43, & 44.

The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court makes the following recommendations.

## BACKGROUND[2]

### I. The United States' Complaint

The United States, acting through the United States Department of Agriculture, Forest Service (the "Forest Service"), filed this lawsuit against Mr. Pipkin, Mr. Hammon, and other unknown individuals acting in concert with a group calling themselves the "Free Land Holder Committee" ("FLHC"), to enjoin the unlawful fencing of an area of federal public land in Montezuma County, Colorado, referred to as the Hallar Deed Area. *See generally* ECF No. 1.

The Complaint alleges that the Forest Service is charged by federal law to manage, administer, and protect National Forest System ("NFS") lands. *Id.* ¶ 4 (citing 16 U.S.C. § 551; 36 C.F.R. §§ 251.50, 261.9, 261.10, 261.12). The Hallar Deed Area is NFS land within the San Juan National Forest that the United States has held title to since grantor Fred C. Hallar deeded the land to the United States by warranty deed in 1927. *Id.* Members of the public regularly use the Hallar Deed Area for recreation and livestock grazing. *Id.* ¶¶ 28–31.

The United States alleges that Mr. Pipkin is a former co-owner of the Blue Mountain Ranch, a private property adjacent to the Hallar Deed Area where Mr. Pipkin

---

[2] The following allegations are taken from the United States' Complaint for Declaratory and Injunctive Relief ("Complaint"), ECF No. 1, and all non-conclusory allegations are presumed true for the purposes of the motions to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

lives and is owned by a trust bearing Mr. Pipkin's initials. *Id.* ¶ 5. Mr. Pipkin claims to be an "Ambassador" for the FLHC and the ranch is a locus of FLHC activity. *Id.* ¶¶ 6, 34. Mr. Hammon, a Utah resident, is alleged to be a member of the FLHC. *Id.* ¶ 7.

The United States claims that on October 5, 2024, Mr. Pipkin, Mr. Hammon, and other FLHC members entered the Hallar Deed Area and began constructing a fence without permission or agreement of the Forest Service. *Id.* ¶¶ 35–36. They constructed several miles of this fence by "laying purported survey markers, tying neon surveyor's tape to trees, removing vegetation and trees, installing metal fenceposts and wooden and metal braces, and stringing barbed wire on the fenceposts and braces through NFS lands along the boundary of the Hallar Deed Area." *Id.* ¶¶–39.

That day, a Forest Service Law Enforcement Officer confronted the group, which was led by Mr. Pipkin and included Mr. Hammon. *Id.* ¶¶ 40–41, 45, 52. Mr. Pipkin asserted that the lands belonged to the "Republic of the United States of America," which apparently is a different entity than the United States. *Id.* ¶ 43.

On October 9, 2024, a Forest Service Ranger met with Mr. Pipkin and requested that he immediately remove the fencing. *Id.* ¶¶ 62–63. Mr. Pipkin "asked to speak to a diplomat from the United States." *Id.* ¶ 64. He also made several proclamations on behalf of the FLHC regarding the group's ownership of the Hallar Deed Area, which concerned members of the local community. *Id*. ¶¶ 73–76, 81.

On October 10–11, 2024, a group of local residents traveled to the Hallar Deed Area and began dismantling the fencing material that Defendants had installed, but stopped their efforts when confronted by Defendants. *Id.* ¶¶ 69–72. As a result,

"substantial quantities of fencing materials that Defendants placed or caused to be placed in the Hallar Deed Area are still present on federal land." *Id*. ¶ 79.

The United States asserts two claims for relief under the 1885 Unlawful Inclosures Act ("UIA"), 43 U.S.C. § 1061–1066, and one claim for trespass. *Id*. ¶¶ 87–111. It seeks declaratory and injunctive relief. *Id*. ¶¶ 112–116.

## II. The Subject Motions to Dismiss

Each of the subject filings are titled "Formal Challenge to this Court[']s Jurisdiction."

ECF No. 31 was filed by Mr. Hammon and states in a conclusory fashion that the United States does not own the land in question and that no inclosures were ever constructed.

ECF No. 32, filed by Mr. Pipkin, restates Mr. Hammon's arguments but also includes "Scripture Verses, Exclusive Equity Maxims, and Exclusive Equity Principles" which he contends support "the divine covenant of land inheritance."

ECF Nos. 42 & 44 were filed by Mr. Pipkin, apparently on behalf of the FLHC in his capacity as "Ambassador." Mr. Pipkin is not an attorney licensed to practice in this Court. He can only represent himself. *See* D.C.COLO.LAttyR 5(a)(5) ("Only an unrepresented party or a member of the bar of this court . . . may appear in a matter before the court, sign and file a pleading or document."). Moreover, the FLHC is not a party to this litigation. These documents should therefore be stricken.

ECF No. 43 was filed by Mr. Pipkin. It appears to be a supplement to, or continuation of, ECF No. 32, as it contains his exegesis of additional biblical verses and maxims. It also includes what appears to be a copy of the 1927 deed by which Fred Hallar conveyed the Hallar Deed Area to the United States. *See id.* at 28–30.

4

## LEGAL STANDARDS

### I. Pro Se Defendants

Mr. Pipkin and Mr. Hammon proceed pro se. The Court, therefore, "review[sns their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, their pro se status does not entitle them to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### II. Rule 12(b)(1)[3]

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows a defendant to raise the defense of the Court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

---

[3] It is unclear if Defendants bring their motions under Rule 12(b)(1) or 12(b)(6). This is largely irrelevant, however. As discussed below, the Court must accept the Complaint's allegations as true under either standard.

5

A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When reviewing a factual attack, courts cannot "presume the truthfulness of the complaint's factual allegations," and may consider documents outside the complaint without converting the motion to dismiss into a motion for summary judgment. *Ratheal v. United States*, No. 20-4099, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021) (unpublished).

### III.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d at 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw

6

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## DISCUSSION

It is difficult to ascertain on what grounds Defendants challenge the Court's jurisdiction. The United States construes the subject motions to assert two grounds for dismissal: (1) the United States does not own the land that is at issue, and that the Forest Service is only a management agency that has never proven its title to the land;

and (2) Defendants did not construct "an inclosure" because trails and roadways on the land were left open.

Accepting the allegations of the Complaint as true, as the Court must in the face of a facial challenge to jurisdiction under Rule 12(b)(1) or on a Rule 12(b)(6) motion to dismiss, the Court finds that the United States has alleged facts sufficient to show it owns the land and that Mr. Pipkin and Mr. Hammon violated the UIA. A motion to dismiss is not the place to decide whether the allegations in the Complaint are true or not. They are assumed to be true at this point. The summary judgment or trial stage are where each side gets to present facts in support of their respective positions  At this point, the only question is whether the Complaint *alleges* sufficient facts to support the claims. It indisputably does.

As an initial matter, the Court notes that under the UIA, jurisdiction is "conferred on any United States district court or territorial district court having jurisdiction over the locality where the land inclosed, or any part thereof, shall be situated, to hear and determine proceedings in equity, by writ of injunction, to restrain violations of the provisions of this chapter." 43 U.S.C. § 1062.

As to ownership, the Complaint alleges that the United States is the owner of the Haller Deed Area, which it acquired in 1927. ECF No. 1 ¶ 1, 4, 21–23. The United States' allegations are supported by the copy of the 1927 deed Mr. Pipkin filed with the Court. *See* ECF No. 43 at 28–30. And, according to the Complaint, the Forest Service manages the land as part of the San Juan National Forest; whether this governmental

8

agency has title to property is irrelevant. ECF No. 1 ¶¶ 1, 24. Neither Mr. Pipkin nor Mr. Hammon offer credible argument to the contrary.[4]

The Complaint also adequately alleges that Mr. Pipkin and Mr. Hammon violated the UIA, which provides "that any inclosure of public land is prohibited, and no one may completely prevent or obstruct another from peacefully entering or freely passing over or through public lands. *Iron Bar Holdings, LLC v. Cape*, 131 F.4th 1153, 1167 (10th Cir. 2025) (citing 43 U.S.C. §§ 1063, 1066). The United States claims that Defendants constructed miles of fenceposts and barbed wire across the Hallar Deed Area, which is public land. A fence is the "most common way of creating an inclosure." *Id.* at 1168. Indeed, § 1063 explicitly prohibits obstructing "transit over public lands . . . by force, threats, intimidation, or by any *fencing* or inclosing." 43 U.S.C. § 1063 (emphasis added); *see also Iron Bar Holdings*, 131 F.4th at 1167. According to the Complaint, Defendants' actions obstructed the free passage of livestock and interfered with the public's recreation activities, including trail running, hiking, bike riding, horseback riding, dog walking, hunting, skiing, and snowshoeing. This is enough to state a claim, even if, as Defendants maintain, "all trails and road-ways have always been open." *See U.S. ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1511 (10th Cir. 1988) (noting that the government can demand removal of a fence even on *private* land if its construction

---

[4] The Court is not, and cannot be, swayed by Mr. Pipkin's citation to religious and other non-legal authority. "The Court's proceedings, decisions and orders are governed by the Federal Rules of Civil Procedure, United States statutes, and case law from the United States Supreme Court and the Court of Appeals for the Tenth Circuit." *Martin v. Soc. Sec. Admin.*, No. 18CV347 MV/GJF, 2018 WL 2303789, at *2 (D.N.M. May 21, 2018) (rejecting the plaintiff's demand that the court justify its prior rulings by citing religious authority).

violates the UIA, and that "[t]he mere presence of gates or openings in a fence does *not* mean the enclosure[5] is lawful").

The Complaint alleges facts sufficient to state claims for relief and/or establish subject-matter jurisdiction. Defendants' motions should be denied.

## CONCLUSION

It is hereby **RECOMMENDED** that the ECF Nos. 42 & 44 be **STRICKEN**, and ECF Nos. 31, 32, & 43 be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corrections*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: July 10, 2025
Denver, Colorado

*N. Reid Neureiter* (signature)
N. Reid. Neureiter
United States Magistrate Judge

---

[5] As the United States notes, the case law refers interchangeably to an "inclosure" or to the modern spelling, "enclosure."