IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03301-DDD-NRN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PATRICK PIPKIN, a/k/a Patrick Leroy Pipkin, a/k/a Patrick-Leroy Pipkin,
BRYAN HAMMON, a/k/a Bryan Hugh Hammon, and
UNKNOWN INDIVIDUALS WHO ENGAGED IN UNLAWFUL FENCING OF THE HALLAR DEED AREA OR WHO HAVE OTHERWISE ACTED IN CONCERT WITH AN ASSOCIATION OF INDIVIDUALS CALLED THE "FREE LAND HOLDER COMMITTEE,"

    Defendants.

---

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND ENTRY OF A
PERMANENT INJUNCTION AS TO DEFENDANTS PATRICK PIPKIN AND BRYAN
HAMMON (ECF No. 59)**

---

**N. Reid Neureiter
United States Magistrate Judge**

    This case is before the Court pursuant to an Order, ECF No. 60, issued by Judge Daniel D. Domenico referring Plaintiff the United States' Motion for Summary Judgment, ECF No. 59. Defendants Patrick Pipkin and Bryan Hammon did not file a response. The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that the Motion for Summary Judgment, ECF No. 59, be **GRANTED**.

## I. BACKGROUND[1]

The United States filed this lawsuit on November 26, 2024, alleging three claims for relief: (1) unlawful inclosure and wrongful claims of exclusive use in violation of 43 U.S.C. § 1061 of the Unlawful Inclosures Act ("UIA") ; (2) unlawful obstruction and prevention in violation § 1063 of the UIA; and (3) a common-law trespass claim. *See generally* ECF No. 1. In the operative Complaint for Declaratory and Injunctive Relief ("Complaint"), Plaintiff claims that Defendants unlawfully fenced an area of federal public land in Montezuma County, Colorado, referred to as the Hallar Deed Area, resulting in the obstruction of free passage across a large portion of this land. ECF No. 1 at 2. Additionally, Defendant Pipkin has posted notice claiming authority over the use of the land on behalf of a group called the "Free Land Holder Committee" ("FLHC"). *Id.* The United States claims title to the land under the Hallar Deed and asserts that Defendants have neither permission from the United States nor any other legal right to construct fencing on or proclaim authority over this public land. *Id.*

The United States argues that based on the undisputed material facts, it is entitled to summary judgment and requests permanent injunctive relief restraining the Defendants and any anyone acting in concert with them from

> (1) placing any personal property on any land in the San Juan National Forest without authorization from the United States; (2) inclosing in any way any portion of that land; (3) obstructing in any way the free passage to or transit over or through the land; and (4) otherwise interfering with the United States' or the public's lawful use of, or access to, the land.

ECF No. 59 at 1. As explained below, the Court agrees that the United States is entitled to summary judgment on all its claims, and that injunctive relief should be granted.

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

II. **STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")**[2]

The land at issue is located in the Haller Deed Area in Montezuma County, Colorado. SUMF ¶ 1. The Hallar Deed was originally acquired by the United States through the Treaty of Guadalupe Hidalgo of 1848, 9 Stat. 922. *Id.* ¶ 2. Over several years, the United States patented out the Hallar Deed Area under the Land Act of 1820 and the Homestead Act of 1862. *Id.* ¶ 3. On March 24, 1927, pursuant to the General Exchange Act of 1922, Fred C. Hallar conveyed the land back to the United States via warranty deed, in exchange for timber rights within the National Forest. *Id.* ¶¶ 4–5. The legal description of the lands conveyed in the 1927 deed is:

> New Mexico Principal Meridian, Colorado
> T. 37 N., R. 13 W.,
>     sec. 21, E1/2;
>     sec. 22, SW1/4NW1/4 and W1/2SW1/4;
>     sec. 23, SW1/4NW1/4 and NW1/4SW1/4;
>     sec. 27, W1/2NW1/4 and NW1/4SW1/4;
>     sec. 28, E1/2, N1/2NW1/4, SE1/4NW1/4 and N1/2SW1/4NW1/4;
>     sec. 29, NE1/4NE1/4, N1/2SE1/4NE1/4, W1/2NW1/4,
>     NE1/4SW1/4, S1/2NE1/4SE1/4 and SE1/4SE1/4;
>     sec. 30, SE1/4NE1/4 and W1/2SE1/4.

*Id.* ¶ 7. The deed was filed in the United States Pueblo Land Office and recorded with the Bureau of Land Management ("BLM") and the Montezuma County Recorder; the United States accepted title to the Hallar Deed Area on April 20, 1928. *Id.* ¶¶ 8–9.

The Hallar Deed Area is part of an area called "Chicken Creek," in the Mancos/Dolores Ranger District of the San Juan National Forest, which is part of the National Forest System ("NFS"). *Id.* ¶ 10. The Forest Service manages the Hallar Deed Area. *Id.* The public makes frequent use of the Hallar Deed Area for recreation,

---

[2] The following facts are taken solely from the United States' SUMF, ECF No. 59 at 3–12, because Defendants did not file a response.

3

including the Chicken Creek Challenge, an annual school cross-country meet hosting up to 400 runners. *Id.* ¶ 12–13. Public use of the Hallar Deed Area is free ranging; it does not confine itself to designated roads or trails. *Id.* ¶ 42. The Hallar Deed area is also used for livestock grazing, pursuant to permits issued by the Forest Service. *Id.* ¶ 14–15.

On October 5, 2024, Forest Service Law Enforcement Officer Michael Bugosh responded to a report that a fence was being constructed on the Hallar Deed Area. *Id.* ¶ 18. Officer Bugosh found several vehicles and approximately four individuals in the vicinity of a newly constructed fence within the Hallar Deed Area. *Id.* ¶ 19. Shortly after Officer Bugosh arrived, a pickup truck arrived towing a trailer that was carrying fencing materials. *Id.* ¶ 21.

Officer Bugosh informed the individuals he was responding to a report of a fence being constructed on NFS land. *Id.* ¶ 22. An individual later identified as Mr. Pipkin asserted that the land belonged to the "Republic" of the United States of America, which he claims is a separate entity than the United States. *Id.* ¶ 25. Mr. Pipkin further asserted that he and his FLHC companions (including Mr. Hammon) had a claim to the land by virtue of their membership in the "Republic of the United States of America." *Id.* ¶¶ 26–28. During this encounter several other FLHC members arrived at the Hallar Deed Area. *Id.* ¶ 30. Officer Bugosh left the scene due to concerns over the number of individuals present and their refusal to identify themselves. *Id.* ¶ 31.

Over the following days, FLHC members continued constructing fencing in the Hallar Deed Area. *Id.* ¶ 32. In some areas, brush and trees had been cut or removed to make way for the fence line. *Id.* ¶ 36. Markers along the boundary line were inscribed

4

with "Free Land Holder, Exclusive Equity and Sacred Honor." *Id.* ¶ 37. Phil Strehle, a Special Agent at the Forest Service, estimated that approximately three miles of barbed-wire fence had been fully erected along the boundary of the Hallar Deed Area. ECF No. 59-8 at 2; SUMF ¶ 39. Special Agent Strehle further estimated that fence posts had been installed without barbed wire on an additional one mile of the boundary, and that markers had been placed along another approximately two-and-a-half miles of the Hallar Deed Boundary. SUMF ¶ 39. The Forest Service did not give Defendants permission to conduct any of these activities. *Id.* ¶ 40.

The property boundary that Defendants surveyed, marked, and partially fenced intersects with official trails, unofficial trials, and decommissioned logging roads, which members of the public use for recreation. *Id.* ¶ 43. Additionally, the fence blocked at least one cross-country ski trail. *Id.* ¶ 41. The fence threatened to trap or injure wildlife, interfered with the movement of grazing cattle, and cut off a reservoir that one of the grazing permittees maintains on the Hallar Deed Area. *Id.* ¶¶ 44–47. Although there were gaps in the fence where the fence line intersected with certain roads and trails, the gaps were such that Defendants could have quickly and easily closed them at any time by installing gates. *Id.* ¶ 45. Due to safety concerns related to Defendants' activities and presence in the area, the Chicken Creek Challenge was relocated to public land further removed from the Hallar Deed Area. *Id.* ¶¶ 48–49.

On October 9, 2024, District Ranger Nicholas Mustoe met with Mr. Pipkin and delivered a letter stating that the fence was in trespass and requesting immediate removal. *Id.* ¶¶ 50–51. Mr. Pipkin did not agree to remove the fence. *Id.* ¶ 52. The

5

Forest Service later sent an impound notice to Mr. Pipkin demanding that he remove the fencing materials Defendants had placed on the Hallar Deed Area. *Id.* ¶ 54.

The public took close interest in Defendants' actions, due to its extensive use of the Hallar Deed Area for recreation. *Id.* ¶ 60. In interactions with members of the public, Hammon and other FLHC Defendants asserted their claims to the Hallar Deed Area. *Id.* ¶ 57. Beginning on October 10, 2024, local residents began removing Defendants' fence from the Hallar Deed Area. *Id.* ¶¶ 61–62.

On October 9, 2024, and continuing into December 2024, Mr. Pipkin publicly posted several documents that purported to exercise control over or lay claim to the Hallar Deed Area. *Id.* ¶ 63. One such document, posted at the Mancos Post Office and titled "Proclamation 001," was signed by Mr. Pipkin as an "Ambassador" for the FLHC. *Id.* ¶ 64. Proclamation 001 states that the FLHC would not block existing easements and other uses, and that "existing cattle grazing rights" or "agreements issued prior to any claims by the Free Land Holders" would be honored until the end of 2024. *Id.* ¶ 65; ECF No. 59-4 at 8. Another document posted at the Mancos Post Office, titled "Notice of Claim," makes a claim to the Hallar Deed Area on behalf of the FLHC and states that "all those with an equal, previous or superior claim" must reply to the FLHC by December 15, 2024, or FLHC's claim will be "resolved forever." SUMF ¶¶ 67–69; ECF No. 59-4 at 10. No documents posted by Defendants identify any deed or other legal basis for the Defendants' right or title to the Hallar Deed Area. SUMF ¶ 71.

6

### III. LEGAL STANDARDS

#### a. Pro Se Defendants

Defendants Pipkin and Hammon proceed pro se. Therefore, the Court "review[s] their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S.*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, the Court may not act as an advocate for a pro se litigant and must apply the same procedural rules and substantive law to Mr. Pipkin and Mr. Hammon as to any other represented party. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not entitle Defendants to an application of different rules. *See Montoya v. Chao*, 296 F. 3d 952, 957 (10th Cir. 2002).

#### b. Motion for Summary Judgment under Rule 56

A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, a judge's function at summary judgment is to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at

7

trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the burden shifts to the non-moving party to show that there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. The opposing party may not rest on allegations contained in its complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he contents of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v.*

*Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Moreover, the Court has no obligation to scour the record in search of evidence to support any factual assertions, and where inadequate record citations have been made, the court may ignore them. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). ("Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence. . . ."); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.") This is because judges "are not like pigs, hunting for truffles buried in briefs." *Gross*, 53 F.3d at 1546 (quotation omitted). And if a non-moving party fails to address a moving party's argument concerning a claim, the non-moving party is deemed to have abandoned that claim. *See Hinsdale v. City of Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's grant of summary judgment on plaintiff's claims because he abandoned his claims "by failing to address them in his response to defendants' motion for summary judgment"); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (finding that by failing to file a response, plaintiff "waived the right to file a response and confessed all facts asserted and properly supported in the summary judgment motion"); Fed. R. Civ. P. 56(e).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986).

## IV. ANALYSIS

As noted above, the United States brings claims of unlawful inclosure and unlawful obstruction under §§ 1061 and 1063 of the UIA and a common law trespass claim. The Court agrees with the United States that based on the undisputed material facts, the United States is entitled to summary judgment on these claims, and a permanent injunction should be granted.

### a. Defendants unlawfully inclosed and made wrongful claims of exclusive use of the Hallar Deed Area in violation of § 1061.

Section 1061 of the UIA prohibits "[a]ll inclosures of any public lands in any State or Territory of the United States" made without "claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith . . . ." 43 U.S.C. § 1061. The UIA was "intended to prevent the obstruction of free passage or transit for any and all lawful purposes over public lands." *U.S. ex rel Bergen v. Lawrence*, 848 F.2d 1502, 1509 (10th Cir. 1988) (emphasis omitted) (quoting *Stoddard v. United States*, 214 F. 566 (8th Cir. 1914)).

The Tenth Circuit has instructed that "inclosure" must be read broadly. In a case where public and private land met in a checkerboard pattern, the Tenth Circuit held that a landowner posting signs and a chain where private land met public land at the corner points constituted an inclosure under the UIA. *Iron Bar Holdings, LLC v. Cape*, 131 F.4th 1153, 1156 (10th Cir. 2025), *cert. denied*, No. 25-64, 2025 WL 2949573 (U.S. Oct. 20, 2025). This barrier was designed to prevent hunters from "corner-crossing" diagonally from one parcel of public land to another over the point where public and private land meet. *Id.* The court held that even though the barrier did not fence in the public land, it still constituted an unlawful inclosure under the UIA because it freed land

10

from "rights of common, commonable rights." *Id.* at 1167–68. Even "a purely legal barrier erected by 'no trespassing' signs—like a virtual wall—could be considered an inclosure under the UIA." *Id.* at 1168. The key consideration is whether the barrier, in whatever form it takes, effectively asserts a private right to public land.

This Circuit has also recognized that a fence can constitute an unlawful inclosure under the UIA even if it has openings or gates. In *Lawrence,* the court held that "[t]he mere presence of gates or openings in a fence does *not* mean the enclosure is lawful." 848 F.2d at 1511. The court cited the Eighth Circuit's decision in *Stoddard*, where it held that a fence may constitute an inclosure when openings are insufficient for "the free passage of stock." 214 F. at 568.

In this case, it is undisputed that Defendants surveyed, marked, and partially fenced the Hallar Deed Area. *See* SUMF ¶¶ 43, 63. The construction of the barbed-wire fence alone is sufficient to demonstrate an unlawful inclosure under the UIA. *See Iron Bar Holdings*, 131 F.4th at 1168 (recognizing that a fence is the "most common way of creating an inclosure"). Although the fencing was not completed, the marked and surveyed fence line demonstrated an intent to fully inclose the land, and it was only the intervention by the public that prevented further construction of the fence. Moreover, the fact that there were gaps in the fence where the fence line intersected with trails and roads, which were constructed in such a way that gates could be easily and quickly installed, is insufficient to find that the land was not unlawfully inclosed. *See Lawrence*, 848 F.2d at 1511. And it is obvious that Defendants' fencing activities did, in fact, interfere with public use of the land. The United States has sufficiently shown that it is entitled to summary judgment on this claim.

11

The United States further argues that Defendants violated § 1061 of the UIA by posting public notices asserting a claim of ownership over the Hallar Deed Area on behalf of the FLHC. In addition to proscribing inclosures of public land, Section 1061 also prohibits "the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any State or any of the Territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure." 43 U.S.C § 1061. Defendants posted public statements and Notices of Claim regarding the Hallar Deed area. Through these statements and notices, Defendants purported to exercise control over the land and indicated that the FLHC might alter public use of the land. *See* SUMF ¶ 65; ECF No. 59-4 at 8 (Proclamation 001 stating that "existing cattle grazing rights" would be honored until the end of 2024). Mr. Pipkin personally signed the public notices, asserting a claim of ownership on behalf of the FLHC. *Id.* ¶ 67. These notices state a legal claim to the land and demand that "all those with an equal, previous or superior claim" reply to the FLHC by December 15, 2024, or FLHC's claim will be "resolved forever." *Id.* ¶¶ 67–69. The FLHC invoked the authority to permit public use of the land and suggested that it may exclude public use in the future. *Id.* ¶ 65. Mr. Hammon similarly asserted, in a statement made to members of the public, that the FLHC had an ownership claim to the Hallar Deed Area. *Id.* ¶ 57. These statements and notices regarding ownership of the land were all done without permission of the United States, the undisputed owner of the Hallar Deed Area. Defendants have not identified any deed or other legal basis for their right or title to the land. The Court therefore agrees that Defendants violated § 1061 through their unfounded assertions of title to the Hallar Deed Area.

For these reasons, the United States is entitled to summary judgment on its § 1061 claim of unlawful inclosure and wrongful claims of exclusive use.

### b. Defendants unlawfully obstructed public land in violation of § 1063.

The UIA provides that "[n]o person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means . . . shall prevent or obstruct free passage or transit over or through the public lands." 43 U.S.C. § 1063. Section 1063 applies both to the obstruction of people and animals. *See Lawrence*, 848 F.2d at 1508.

Defendants' fence obstructed the free passage of both people and animals over the Hallar Deed Area. The property boundary surveyed, marked, and partially fenced by Defendants intersects with official trails, unofficial trials, and decommissioned logging roads, all of which members of the public use for recreation. SUMF. ¶ 43. Because public use of the Hallar Deed Area is free ranging and not confined to designated roads and trails, the fence line along the border of the Hallar Deed Area obstructed the free passage of people over federal public land, despite the gaps in the fence where it intersected certain trails and roads. *Id.* ¶¶ 42, 45. Additionally, the fence blocked at least one cross-country ski trail. *Id.* ¶ 41. The barbed wire fence posed a safety risk to the public's use of the Haller Deed Area, threatened to trap or injure wildlife and interfere with the movement of grazing cattle, and cut off a reservoir that one of the grazing permittees maintains on the Hallar Deed Area. *Id.* ¶¶ 44–47.

Defendants further obstructed public use of the Hallar Deed Area by creating safety concerns related to the Defendants' presence and activities in the Area. Id. ¶¶ 47–48. As a result, the Chicken Creek Challenge cross-country meet was relocated to public land further away from the Hallar Deed Area. Id.

13

These undisputed material facts clearly establish unlawful obstruction of free passage over federal public land, in violation of Section 1063 of the UIA. The United States is entitled to summary judgment on its unlawful obstruction claim.

### c. The United States is entitled to summary judgment on its common law trespass claim.

"[T]he government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers." *Camfield v. U.S.*, 167 U.S. 518, 524 (1897). In addition to statutory claims under the UIA, the United States has the right to prosecute common law trespass claims. *See id.* at 525. A person is liable for trespass if they intentionally and without permission enter or remain on the land of another or fail to remove a thing from the land which they are under a duty to remove. Restatement (Second) of Torts § 158; *see also U.S. v. Osterlund*, 505 F. Supp. 165, 167 (D. Colo. 1981) (applying Restatement to federal trespass claim).

The undisputed facts establish all the elements of a common law trespass claim. The United States owns the Hallar Deed Area. SUMF ¶ 4. Defendants intentionally entered the Hallar Deed Area and constructed fencing without the United States' permission. *Id.* ¶ 39–40. Defendants additionally failed to remove their fencing materials from the Hallar Deed area after Forest Service instructed them to do so. *Id.* ¶ 50-54. Therefore, the United State is entitled to summary judgment on its trespass claim.

### d. A permanent injunction barring further unlawful interference with NFS lands is appropriate.

Section 1062 of the UIA empowers district courts to issue injunctions to restrain UIA violations. *See* 43 U.S.C § 1062 ("[J]urisdiction is also conferred on any United States district court or territorial district court having jurisdiction over the locality where the land inclosed . . . to hear and determine proceedings in equity, by writ of injunction,

14

to restrain violations of the provisions of this chapter."). To be entitled to an injunction the United States must show "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153 (10th Cir. 2013). All factors weigh in favor of an injunction.

As shown above, the undisputed material facts establish that the United States is entitled to success on the merits for all of its claims.

Without a permanent injunction, the United States and the public face substantial irreparable injury that money damages would be insufficient to address. Access to public land was obstructed when Defendants unlawfully obstructed and inclosed the Hallar Deed Area with miles of barbed-wire fence. Additionally, Defendants' posted notices claiming ownership over the Hallar Deed Area, as well as their conduct in this litigation, suggest an ongoing intent to assert ownership rights over the land. This Court agrees that a permanent injunction is necessary to preserve secure public access to the Hallar Deed Area.

The benefit to the public and the government in protecting lawful access to public land is weighed against the harm the injunction may cause to the defendants. Here, the injunction would prevent Defendants from asserting an unfounded claim to the Hallar Deed Area. Defendants do not suffer cognizable harm from being forced to cease their illegal activities. Therefore, the threatened harm greatly outweighs the potential harm caused by the injunction.

Finally, the injunction clearly weighs in favor of the public interest as it protects and preserves public access to federal land. Congress recognized that the public has a strong interest in accessing public land, as evidenced by the UIA. Further, it is clear from the SUMF that the local community values and regularly uses the Hallar Deed Area, as evidenced by the spontaneous dismantling of the unauthorized fence.

For these reasons, the United States is entitled to a permanent injunction.

## V. CONCLUSION

It is hereby **RECOMMENDED** that Plaintiff United States of America's Motion for Summary Judgment and Entry of Injunction as to Defendants Patrick Pipkin and Bryan Hammon, ECF No. 59 be **GRANTED**, and that the Court enter the following relief:

- Declaratory judgment that Defendants do not have the right to fence, obstruct, or claim exclusive rights to control the use of the Hallar Deed Area, and that such a claim is without legal right.
- A permanent injunction prohibiting Defendants, and anyone acting in concert or privity with Defendants, from:
    - Placing or installing any unauthorized personal property on the Hallar Deed Area, including, but not limited to, any surveyor's tape, survey markers, fenceposts, wooden or metal braces, barbed wire, or trespassing signs or other notices;
    - Preventing or obstructing in any way the free passage to or transit over or through the Hallar Deed Area;
    - Inclosing in any way any portion of the Hallar Deed Area;

- - o   Otherwise taking any action with respect to the Hallar Deed Area that would violate §§ 1061 or 1063 of the UIA; and
  - o   Otherwise interfering with, obstructing, or impeding the United States and the public from their use, access, and occupancy of the Hallar Deed Area.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn*, 474 U.S. 140, 148-53 **(1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated at Denver, Colorado this 21st Day of November 2025.

                                              N. Reid. Neureiter
                                              United States Magistrate Judge